Howry, J.,
delivered the opinion of the court:
Plaintiff is a corporation and sues to recover the balance on the contract set forth in the findings, whereby it obligated itself for the sum of $108,874.12 to supply about twenty-three millions of packets of certain vegetable, field, lawn grass, and flower seeds for distribution by the United States. Ten per cent of all amounts becoming due under the contract was to be withheld to cover delinquencies which might' arise and for deductions from the rates named in the contract if there were deficiencies in the seeds delivered either in quantity or quality. Defendants having withheld this 10 per cent, together with other sums claimed not to be due, plaintiff asks for judgment in the sum of $18,299.57. Defendants urge fraud in the methods adopted by plaintiff in the execution of the contract, as well as failure to perform, out of which counterclaims have arisen, and for which judgment is asked against the corporation in various sums.
The suggestion of fraud rests upon the allegation that plaintiff’s manager and superintendent, with intent to defraud, instructed the employees engaged in filling seed packets to fill at a weight lighter than that provided for by the agreement, and that pursuant to these instructions the packets were filled at light weight, by means of which defendants were materially defrauded. Practically, the charge is conspiracy, inasmuch as it is alleged that the superintendent was to notify the girls engaged in filling the packets that they were to let the weights run lighter than the contract rates, and that if the department inspectors complained of *136 short weights the superintendent “ was to pacify and to smooth it over ” and let the short weights continue; and that when the manager of the company was told that these packets were being put up at light weight he instructed plaintiff’s superintendent to let the improper work go on, in consequence of which the packets of seeds ran short all the time. Though there is no formal plea, the suggestions of fraud in this connection, supplemented by testimony and requests for findings, is authority enough to enable the court to give the matter consideration. As no surprise is suggested, the court has proceeded on the record as presented regardless of a formal plea.
Parenthetically we may say here that, could the court sustain the charge, the results would be far more consequential than those indicated by the assertion of limited counterclaims. The Revised Statutes provide that any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance of any part of any claim against the Government shall ipso facto forfeit the same. It would be the duty of ■ the court to declare forfeited the entire contract if the proof certainly established the charge made. Harsh as the statutes are which impose such severe penalties for fraud in making up a claim, it is yet a necessary statute for the protection of the Government, and when such a charge is established this court will not only not hesitate to enforce such penalties but will go to whatever extreme under the law which can be justified by the facts proven.
Plaintiff alleges that in the calls for twenty-three millions of packets, which in the case of small vegetable seeds ranged from 64 to 128 packets to the pound; and in the case of large seeds ran 24:0 packets to the bushel, it was impossible to weigh each packet within the time limit and that the only practicable manner of executing the contract was to devise a system of filling by which a fair approximation to the required weights would be reached. It seems that the packets were filled, according to the custom of prior distributions, by a large number of girls seated at tables and using spoons graded in size so as to take the requisite quantity of seed. A forewoman had charge of this room and passed from table *137 to table and tested the work by weighing such a number of packages as was required to make up a quarter of a pound of the seed on which each employee was engaged. Government inspectors, two in number, and the representative of plaintiff were in the room making repeated weighings. When packets were made too heavy or too light, numbers of them were thrown aside; and there seems to have been a considerable accumulation of such packets in baskets, which were left over at the close of the distribution. Under this system plaintiff claims to have made complete deliveries of the requisite number of packets in pounds. Defendants, however, made general estimates, and allege that weighings of packets were made out of the bags of packets and not out of the packages containing 5 packets each. Quantities of packets were rejected from time to time by the inspectors for being light weight, and these were put in baskets, bags, and heaps around the warehouse and at the end of the distribution were gathered up with what remained in the bins and then transferred in boxes to the department. Elaborate calculations and weighings and estimates have been presented to the court to prove light weights, and general averages have been presented upon which deductions have been made to prove failure to deliver the requisite quantity of seeds. There is also much evidence, in the form of depositions, tending to show improper conduct in the deliveries and distribution of seeds and detailing circumstances indicative of an intent to cheat the Government and deprive it of its just dues.
But out of this voluminous record, comprising several hundred pages of printed testimony, of accusation and denial, of tabulated statements and averages, of circumstances and deductions arising out of the competent evidence, the court is unable to find that there was any fraud in the matter of quantity of seed deliveries. It is true that it is not necessary in order to establish fraud that it is incumbent upon the party making the allegation to prove it by direct and positive evidence. Indeed, in a matter of this kind circumstantial evidence would likely afford the only proof that could be adduced, and circumstantial evidence is frequently of more force than direct testimony. Circumstances altogether incon- *138 elusive, if separately considered, may, by their number and joint operation, be sufficient to constitute conclusive proof. But the burden of proof rests upon defendants to make good the charge, and the circumstances-ought to be so clear and convincing that the mind can rest with safety upon the result.
The court has not been able to bring itself to the belief that this charge has been made out.
Though the fraud charged is not proven, the court can not for that reason refuse to make deductions for such deficiencies in the quantity of seeds delivered from causes not resulting from fraudulent intent. But here again the court is confronted with great uncertainty. In adopting the tables of average light-weight percentages the findings would show that plaintiff had not established the delivery of the contract quantities, but manifestly the court can not do this unless it first be shown that these percentages truly represent the weights of the sum total of seeds deliverable. These lightweight percentages were made when plaintiff’s representatives had made the deliveries and gone; they are predicated upon hearsay testimony, and the witnesses who present them do not identify any particular lots of the seeds on which the estimates are gathered. Made up as they were some time after the volume of seeds had been distributed, the court can not rely upon them to make a finding that the amount delivered was not the amount called for by the contract.
Independently of the facts which involve the methods adopted in filling and distributing the seeds and the methods of making the weighings and estimates, it seems clear to the court that the seeds had to be delivered in gross so that they could be inspected before being sealed up in bags and weighed before having the weight of the paper packages added to them. It follows that the responsibility of the plaintiff for the quantity of seeds ceased with their delivery and acceptance in bulk, and if defendants did not weigh the seeds when delivered, it was their neglect. It looks like a case of attempting to lock the stable door after the horse is alleged to have been stolen to offer a counterclaim for failure to perform.
*139 The other defenses which relate to the plaintiff’s right to recover involve the construction of the contract in connection with the findings. These defenses refer to the substitution ■of a different and cheaper variety of seeds than those called for, and deliveries below the fixed standards.
The contract provided that in the event of a crop failure of any kind or variety of seeds described in the schedules, or for other reason deemed sufficient by the department, seeds of any other class or variety might be substituted for the goods first agreed to be delivered; but no such substitution should be made later than the time fixed in the contract, and then only upon the written order of the Secretary of Agriculture or the'Acting Secretary; and payment for the substituted seeds should be made at the rates fixed in the contract for the specific kinds and varieties actually furnished. The evidence does not establish to the satisfaction of the court that there was a crop failure within the intent and meaning of the contract, and plaintiff did not, in any event, substitute proper goods for the beets and onions deliverable according to the agreement, but substituted spinach in place of beets and Australian brown onions for the onion seeds scheduled for delivery. (There were some other substitutions not material enough to be noticed.) It clearly appears that the goods actually delivered in the material substitutions were worth less than those agreed to be delivered under the specifications. Plaintiff contends that the Acting Secretary of the Department waived the fixed contract supply and agreed to the changes and that these substitutions were proper. The findings, however, show that the substitutions were of seeds of less value and usefulness than those agreed to be delivered, and that plaintiff reaped a considerable profit by the failure to deliver according to contract.
It is argued that, notwithstanding the failure to obtain written authority for the delivery of the substituted seeds after the time named in the contract, written authority was not necessary for substituting seeds, and that defendants are bound to pay for the substitutions at the rates fixed in the contract for the specific kinds and varieties there mentioned. This contention is not sound if by it the Govern *140 ment is asked to receive seeds of less value than those scheduled for delivery. Though the act under which the seeds were purchased gave the Secretary power to expend the appropriation in the purchase of seeds, either at public or private sale, “ the best he could obtain ” (31 Stats., 201), the measure of the written obligation fixed the price for the goods therein named or the equivalent in value of those goods.
While verbal agreements to extend the time of performance have been held valid, there was no authority to permit an agreement in writing to be so changed by parol as to prejudice the Government. Nor was it permissible to import into the written agreement, after it was reduced to writing, oral understandings, nor competent to change its terms without consideration. (Stansbury's case, 8 Wall., 33; 21 Atty. Gen. Ops., 116; 22 Ibid., 101; 9 Comp. Decs., 16.) Though payment for seeds substituted for those fixed in the contract at the same rates was expressed, this did not mean that there could even be a written modification so as to permit the substitution of goods of less value than the goods agreed to be delivered without the accompaniment of fair diminution in the price.
Though the substitutions were made in disregard of the contract and without the necessary authority, the department received and used a considerable quantity of seeds in lieu of those agreed to be delivered, and the Government having received the benefit of the same, plaintiff is entitled to be paid the fair and reasonable value of the substituted goods. (Salomons case, 19 Wall., 17; 9 C. Cls. R., 54; Burchiel's case, 4 Ibid., 549; Heathfield's case, 8 Ibid., 213; Mitchell's case, 19 Ibid., 39.) The findings establish the delivery of substituted seeds by which plaintiff reaped a profit and the Government suffered a corresponding loss. The presumption, arising from the execution of the voucher and its possession by plaintiff, that the terms of the contract were fulfilled, has thus been overthrown; onions and beets delivered were not the same agreed to be delivered; and under the circumstances and at the time of the substitutions the products so substituted were not the equivalent in value and price of those agreed to be delivered.
*141 Again, by the contract seeds were to be furnished and delivered for inspection by the agents of the Department of Agriculture, and for such tests regarding purity, germinating power, and trueness to name as might be established and maintained. By a proviso it was stipulated that the Secretary of Agriculture, or Acting Secretary, might accept the seeds falling below the prescribed standards, less a percentage equal to the percentage that such seeds should so fall below the standards, according to a scale fixed in the agreement. Plaintiff was to provide for assembling packets and bags into groups of five, or more, as might be required; each such group of five packets was to be made into and accounted for as one package, and for inclosing such packages in envelopes or wrappers, in accordance with the requirements of the department, and there were to be printed, stamped, or written legends describing the contents of the several inclosed packets on the envelopes or wrappers. Plaintiff’s manager was required to personally supervise the work of putting up and distributing the seeds, and to that end employ for such purpose a competent assistant, whose employment was to be approved by the Secretary or Acting Secretary. Deductions from the rates were to be based upon deficiencies in the purity, germinating qualities, and trueness to names of any of the seeds that might be disclosed by or through the tests prescribed and permanently withheld and not paid at all, according to the deficiencies. The standards for the test as to purity and germination were established by an exhibit attached to the contract, while the standard of trueness to name was notified to plaintiff as established by the Secretary, in accord with its terms.
The findings requested by plaintiff to the effect substantially that the terms of the contract with respect to the delivery of seeds of the necessary contract germinating quality were verbally waived can not be made. We have seen that the agents of the Government had no such authority, and it would serve no useful purpose to inquire into the immaterial matter of the alleged waiver. Valuable seeds suitable for planting and culture in the various sections of the country were directed to be purchased by the law under which the contract was made. The Secretary of Agriculture *142 had no authority to contract for seeds that would not grow, and the authority to stipulate for seeds of necessary purity and trueness to name was implied by the same law which authorized the purchases. The question then is did the delivery of such seeds measure up to the standards fixed by the contract.
The findings show that tests as to mechanical purity were made and five lots of seed were found to be below the contract standard. While the proof of these tests as to freedom from dirt is barely negligible, nevertheless the court finds the fact to be that there was a small deficiency of $81 on this account, for which a deduction must be made.
It is conceded by plaintiff that if there could be no verbal waiver for deficiencies in vitality of those seeds delivered, the sum or $2,842.10 is the utmost that should be deducted on this account. Plaintiff presents a schedule of seeds confessedly lacking in germinating power, which it says should be the basis of settlement if the alleged waiver of the penalties by the Secretary of Agriculture be held by the court ineffective. But the court finds that while it is true that a part of the seed supply was above the standards, plaintiff failed to meet the requirements of the agreement in material particulars. That there were inaccuracies in the tests applied by the Government in determining the extent of the deficiences in vitality is possible, and though these tests may not be absolutely satisfactory to the mind of the court, nevertheless we think they are more than a mere approximate guide. They certainly show that plaintiff reaped a profit and defendants suffered the corresponding loss of a greater amount than plaintiff admits for its failure to meet the requirements of the agreement in this behalf. Rejecting those tests not made in accord with the agreement, the court is of opinion that the deductions proper to be made lie somewhere between the estimates of the respective parties. The general result is covered in the tenth finding in connection with the small deficiency for seeds lacking in purity and for those other deficiencies growing out of the failure to deliver seeds true to name.
Conforming to that provision of the act authorizing purchases and which required the contents of each envelope or *143 wrapper containing packages of seeds to be plainly indicated, and acting under the general authority to have the seeds so purchased true to name, tests were prescribed pursuant to the contract as set forth in the sixth finding. Plaintiff now says that it should have had the privilege of making the tests. But this contention is in contradiction to the fourth clause of the agreement, which required the seeds to be furnished for inspection of the Department of Agriculture, and in contravention of the notice formally given to the plaintiff as set forth in the sixth finding. The Secretary having notified the plaintiff of the standard established for trueness to name and reserved the right to be the sole judge of the results of the tests reported by the officers charged with the duty of making and reporting the tests, plaintiff’s right can not be said to be violated for not making-tests of its own.
Nor do the findings establish that the methods adopted of procuring commercial samples of some of the seeds violated the contract. It had been notified to the plaintiff that the Botanist of the department would be intrusted with the purchase of the commercial samples and instructed to make tests for genuineness. Nothing unfair in the purchase of these samples as far as they went is shown, and the court can not wholly reject such of the tests actually made as conform to the contract.
But in determining proper deductions on this account the court has encountered greater difficulty because of the insistence on the part of plaintiff that the tests made to determine genuineness and trueness to name were not conducted in accordance with the terms of the agreement. Undoubtedly there was much looseness about this part of the business and there is much conflicting testimony respecting the methods adopted by the Government in making these tests. Upon careful consideration the court is of opinion that approximately three-fourths of the seeds deliverable under the agreement were not tested in accordance with the contract. If the defendants sustained a loss on this account, plaintiff can not now be charged with it for want of something definite to fix the amount of such loss. On the other hand, we find that *144 approximately a fourth of the seeds delivered were not true to name; that some of these were rejected and not paid for, while others, though not rejected, were used from the necessities of the situation and pressure for the transmission through the mails of such seeds as were supplied. Tests of these seeds were made according to the contract, and averages made showed diminished, value of these seeds, and we are of opinion that plaintiff derived some advantage from its failure to comply with the contract in this regard. The matter is not entirely clear because of the conflicting statements of the agents of the plaintiff and the officers of the Government. But out of all the mass of conflicting evidence the court has reached its conclusions, upon such reflection as a careful study of the record has afforded.
Accordingly the court has made an average of the three tests prescribed by and under the agreement for purity, germination, and trueness to name, and these averages show that of the seeds supplied there were deficiencies by which plaintiff reaped the profit disclosed by the tenth finding. Deducting the amount there shown and the amounts to which plaintiff is not entitled (because of the substitutions) from the amount of the balance claimed in the petition, plaintiff is entitled to recover the sum of $10,190.98, for which judgment will be entered.