**BROWN CONSTRUCTION TRADES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 760–87 C.**

United States Claims Court.

June 5, 1991.

R. Edward Cooley, Longwood, Fla., Atty. of record, for plaintiff.

Thomas P. McLish, with whom were Asst. Atty. Gen. Stuart M. Gerson, Asst. Director Thomas W. Petersen, and Director David M. Cohen, for defendant. Lieutenant Colonel Susan McNeill, Headquarters, U.S. Air Force, Washington, D.C., of counsel.

## OPINION

WIESE, Judge.

### I

Plaintiff, Brown Construction Trades, Inc., brought this suit to recover payment allegedly due for work completed prior to the default termination of its contract for

painting and related repair work on housing units at MacDill Air Force Base, Florida. Shortly after the suit was filed, the Government moved for a stay of proceedings to await the outcome of a then ongoing grand jury investigation of Brown Construction.

The investigation culminated in indictments and, later, in convictions of Brown Construction and Cecil Brown, the company's vice-president, on charges of bribery and conspiring to bribe and suborn the perjury of the government official responsible for inspection and approval of Brown Construction's work at MacDill Air Force Base. A fine of $5,000, together with the costs of prosecution, was imposed upon Brown Construction for its felony conviction. Cecil Brown was fined $2,000, and, in addition, was sentenced to three years imprisonment, (of which all but three months were suspended), four years of probation and 300 hours of community service.

Based on these criminal convictions (violations of 18 U.S.C. § 371 (1988) (conspiracy to defraud the United States) and 18 U.S.C. § 201(b)(1)(A) (1988) (bribery of a public official)), the United States now moves for summary judgment. The Government contends that plaintiff's commission of a fraudulent act renders its claim unenforceable on grounds of public policy or subject to forfeiture under the provisions of 28 U.S.C. § 2514 (1988).

The Government's motion has been briefed by the parties and argument on the motion was heard on May 30, 1991. At the conclusion of the argument, the court entered a bench ruling in the Government's favor. This opinion formalizes that ruling.

## II

The Government is entitled to prevail on either of the grounds it relies on. First, we address the argument that plaintiff's contract should be held unenforceable on public policy grounds. The case law uniformly states that public policy considerations, in particular concern for the integrity of the Government procurement process, preclude the enforcement of contracts tainted by bribery, kickbacks or con-

flicts of interest. *See, e.g., United States v. Acme Process Equip. Co.,* 385 U.S. 138, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966); *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961); *Joseph Morton Co. v. United States,* 757 F.2d 1273, 1278–79 (Fed.Cir. 1985); *K & R Eng'g Co. v. United States,* 222 Ct.Cl. 340, 616 F.2d 469 (1980); *Atlantic Contracting Co. v. United States,* 57 Ct.Cl. 185 (1922).

Nonenforcement of the contract is an appropriate remedy because, as the Supreme Court pointed out in *Mississippi Valley,* any lesser remedy would compel the public to continue to honor a contract tainted by a known violation of a criminal statute. The Court explained:

> If the Government's sole remedy in a case such as that now before us [involving a contract executed in violation of the federal conflict-of-interest statute, formerly 18 U.S.C. § 434, now 18 U.S.C. § 208] is merely a criminal prosecution against its agent, ... then the public will be forced to bear the burden of complying with the very sort of contract which the statute sought to prevent. Were we to decree the enforcement of such a contract, we would be affirmatively sanctioning the type of infected bargain which the statute outlaws and we would be depriving the public of the protection which Congress has conferred. [364 U.S. at 563, 81 S.Ct. at 316].

The present case is perhaps different in degree, but certainly not in kind. Here we deal with a contract illegality which, though not relating to the whole, nevertheless affects a substantial part. According to plaintiff's brief, the bribe was paid in connection with a contract modification that involves approximately seven percent of the amount claimed due. But the real concern, of course, is not with the extent of the harm known to have occurred. Rather, it rests with the fact that a corruption in the administration of the contract engenders a suspicion about the integrity of the entire course of dealing. Only through the remedy of nonenforcement can the procure-

ment system free itself of the suspicion of frauds gone undetected.

■ The Government is also entitled to relief in accordance with the provisions of 28 U.S.C. § 2514 (1988). That statute directs the forfeiture of a claim against the United States "by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance [of such claim]." This statute has been held to require the forfeiture of any claim affected by fraud, whether intrinsic to the claim or in the presentment of the claim. *Kamen Soap Prods. Co. v. United States*, 129 Ct.Cl. 619, 641, 124 F.Supp. 608, 620 (1954) ("this statute goes further than merely banning fraudulent claims. It provides for a forfeiture of the claim if any fraud is practiced or attempted to be practiced in proving, establishing or allowing a claim.").

The Court of Claims has ruled that where fraud is committed in the course of a contract to which the suit pertains, it may not isolate the affected part and allow suit to proceed on the remainder. The practice of a fraud on part of a contract condemns the whole. The rule is set out in *Little v. United States*, 138 Ct.Cl. 773, 778, 152 F.Supp. 84, 87–88 (1957):

It is true that the forfeiture statute [28 U.S.C. § 2514] was not intended to forfeit an otherwise valid claim of a claimant merely because, in some other unrelated transaction, he had defrauded the Government. But where, as in the present case, fraud was committed in regard to the very contract upon which the suit is brought, this court does not have the right to divide the contract and allow recovery on part of it. Since plaintiff's claims are based entirely upon contract V3020V–241, a contract under which he practiced fraud against the Government, all of his claims under that contract will be forfeited pursuant to 28 U.S.C. § 2514.

Thus, 28 U.S.C. § 2514 requires the forfeiture of all claims arising under a contract tainted by fraud against the Government.

*See also New York Mkt. Gardeners' Ass'n v. United States*, 43 Ct.Cl. 114, 136 (1908).

Despite their established lineage, plaintiff maintains that neither of the remedies for contract fraud that we are endorsing here may lawfully be applied against it given the prohibition against cumulative sanctions announced in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). We disagree.

In *Halper*, the Supreme Court decided that civil penalties, separately imposed on the basis of conduct earlier punished as criminal, violate the constitutional prohibition against double jeopardy when those penalties are unreasonably disproportionate to the actual damages suffered by the Government because of the wrongdoing. Specifically, the Court found constitutionally impermissible a statutory penalty, authorized by the civil False Claims Act, 31 U.S.C. §§ 3729–3731, that subjected Irwin Halper to a liability of $130,000 for false claims amounting to $585, for which he had earlier been imprisoned and fined. The lack of any rational connection between the civil penalty imposed and the damages suffered by the Government because of Halper's wrongdoing identified the civil penalty as a second punishment for the same offense and thus a violation of the Double Jeopardy Clause. 490 U.S. at 441, 449–50, 109 S.Ct. at 1898, 1902–03.

We do not encounter a similar situation here. Neither the nonenforceability of plaintiff's contract claim nor the forfeiture of that claim can be viewed as a second punishment carried out in the guise of a civil sanction. Rather, these remedies represent a rational means of overcoming the harm done to the integrity of the procurement process. Social betterment and not punishment are their aims.

As noted earlier, a lesser sanction—one that would leave plaintiff free to enforce that part of the contract which is claimed to be free of fraud—would surely undermine the integrity of the procurement system. Enforcement of the contract would compel the Government to honor the word of one whose conduct involved a proven violation of public trust, deny the Govern-

ment a remedy for abuses to the contract administrative process, and require the Government to ignore a breach of the obligation of good faith and fair dealing that lies at the heart of all contractual relationships. In short, enforcement of the contract would oblige the Government to recognize as valid a consensual arrangement that never would have been agreed to had Brown's fraudulent purpose been discernible from the start.

That the remedies we endorse here entail a potential denial of payment to the contractor for work done does not change their remedial character. The single object of these remedies is preservation of integrity in the procurement process and not—as was the case in *Halper*—the exaction of monetary compensation from the contractor. Hence, the denial of compensation to the contractor is irrelevant, the unavoidable consequence of the Government's right not to be saddled with the burden of dealing with a fraudulent contractor.

### III

For the reasons stated, defendant's motion for summary judgment is granted. The Clerk shall enter judgment dismissing the complaint.