Hat, Judge,
delivered the opinion of the court:
This is a suit brought by the Atlantic Contracting Company against the United States for the sum of $709,797.02, which sum includes the sum of $450,000, anticipated profits on that part of the contract unperformed. The plaintiff,, however, in the course of these proceedings abandoned its claim for anticipated profits and only asserts its claim to the sum of $259,743.21, which it claims is the amount due it for work done and material furnished to the Government.
*193 On tbe 8th day of October, 1896, the plaintiff entered into a contract in writing with Capt. Oberlin M. Carter, Corps of Engineers, United States Army, representing the United States, whereby it agreed to do certain work for the Government at Cumberland Sound which was being carried under certain aets of Congress. The plaintiff proceeded with the performance of the work until October 9, 189T. On that day with the consent of the plaintiff the work was suspended, and no work was done thereafter by reason of the fact that proceedings were instituted in the United States District Court for the Southern District of Georgia against John F. Gaynor, Benjamin D. Greene, and Oberlin M. Carter, charging them with conspiracy to defraud and embezzlement. These charges related to the work done by the plaintiff under the contract, Gaynor and Greene being the owners of all the stock of the plaintiff except a few shares held by others for purposes of organization only. The total amount of work performed by the plaintiff up to and including October 9, 1897, amounted, according to contract prices as estimated, to the sum of $604,685.21, upon which was paid the sum of $345,000. The amount of work done under the contract up to June 30,1897, estimated by Capt. Carter was $403,865.12. On this amount was paid the sum of $345,000, leaving a balance of $58,023.12. The amount of work done from July 1, 1897, to October 9, 1897, amounted to the sum of $200,820.09, according to estimates and upon the basis of contract prices, although Capt. Gillette, the engineer officer then in charge, refused to pay the plaintiff and asserted that the work did not come up to the specifications set out in the contract. The plaintiff now sues for the amount which it claims it has earned and insists that the Government has received the benefit of its work and material, and that if by reason of fraud in the procurement or carrying out of the contract it is not entitled to recover under the contract, yet it is entitled to recover for the work done and materials furnished, of which the Government has received the benefit; that it can not be bound by acts of bad faith or breaches of duty by its officer or officers in which it took no part and of which it was ignorant.
*194 In order to arrive at a just conclusion with reference to these claims of the plaintiff it is necessary to detail at some length the history of the contract and the connection therewith of the affairs of the plaintiff.
The plaintiff is a corporation. At the time the contract in suit was entered into John F. Gaynor and Benjamin D. Greene owned all the stock of the corporation. The number of shares of stock held by Gaynor and Greene was 5,985. The 15 shares of stock were issued to relatives and friends of Gaynor and Greene for organization purposes. It then appears that Gaynor and Greene were the owners of the corporation — were in effect the corporation.
The contract in suit was for the benefit of and was in fact procured by John F. Gaynor, the president of the plaintiff corporation, and Benjamin D. Greene, the owner of about one-half of the capital stock of the corporation. On April 12, 1906, in the United States District Court of the Eastern Division of'the Eastern District of Georgia, John F. Gaynor and Benjamin D. Greene were convicted for conspiracy to defraud; for conspiracy in presenting false claims against the Government, and for embezzling from the Government the sum of $575,749.90, $845,000 of which sum was the amount paid to the plaintiff under the contract in suit, this sum having been paid to plaintiff through the agency of Capt. Oberlin M. Carter, the engineer in charge of the work under this contract. The said Gaynor and Greene, in pursuance of the verdict against them, were sentenced each to a term of four years in the United States penitentiary at Atlanta and fined each in the sum of $575,749.90. Oberlin M. Carter, captain in the Corps of Engineers, United States Army, was tried by a court-martial for his participation with Gaynor and Greene in the conspiracy to defraud the Government, and for his participation with Gaynor and Greene in the embezzlement of the money of the Government which was paid to Gaynor and Greene by virtue of and under the contract in suit. Said Carter was convicted of the charges and sentenced to be dismissed from the Army of the United States and to be imprisoned in the United States penitentiary. From the recital of the above facts it appears that Gaynor, Greene, and Carter have been con- *195 victecl of embezzling the money of the Government, of conspiracy to defraud the Government, and of presenting fraudulent claims to the Government; that the money so embezzled was paid by an officer of the Government to the plaintiff through its president, John F. Gaynor, and by virtue of the contract which the plaintiff had with the United States. ■ It is a significant fact that the plaintiff corporation was organized in the year 1892, when Oberlin M. Carter was in charge of the river and harbor work in the territory in which Greene and Gaynor were then operating as contractors, and that in that year it obtained its first contract from Carter.
It seems to be admitted that no recovery can he had upon. the contract because it is tainted with fraud. But the plaintiff insists that this is not an obstacle to its recovery upon a quantum meruit, and it proceeded to prove the value of the work done by it and for which it seeks to recover. The plaintiff relies upon the case of Crocker v. United.States, 240 U. S. 74, and cases therein cited. But in this case the corporation was in fact owned by Gaynor and Greene; they were its organizers and incorporators; they were parties to the fraud; they embezzled the money; they with their partner in crime, Carter, conceived the crime; and they are the owners of the plaintiff corporation, and their acts are its acts. It was in substance a name only under which its owners operated. This being so, and it -can not be disputed, can this plaintiff be allowed to maintain an action in this court for money which when recovered will be paid over, through -this plaintiff, to the very persons who are guilty of the fraud? It would be a dangerous precedent to lay down as law that the perpetrators of a fraud against the Government can benefit by that fraud through the instrumentality of a corporation of which they are the owners, and under the guise of an innocent third party recover money from the United States when it has been shown that they are embezzlers from the Government to the amount of nearly $600,000.
The United States has recovered from Carter a part of the money embezzled by him. United States v. Carter, 217 U. S. 286. In this case it is proposed that not only shall the *196 United States not recover the money embezzled by Gaynor and Greene, who acted in conjunction with Carter, but that the United States shall pay to these convicted embezzlers a large sum of money. The reason given to bolster up this preposterous proposition is that the money is due by the Government to a corporation which is admittedly owned by these embezzlers. Public decency and morality forbid the court to entertain this attempt on the part of Gaynor and Greene to recover from the Government money which is in excess of and in addition to money which they have already embezzled from the United States.
While the plaintiff seeks to recover upon a quantum meruit, yet it is apparent from the evidence that its alleged rights spring directly from the contract, which is illegal and fraudulent. No court will lend its assistance in any way to carry out the terms of an illegal contract, nor will the court enforce any alleged rights directly springing from such contract. McMullen v. Hoffman, 174 U. S. 639, 654. The rights which the plaintiff seeks to enforce in this case spring directly from an illegal and fraudulent contract. The work done by it before and subsequent to July 1, 1897, was done under such a contract; the prices fixed in the contract are relied upon, the plaintiff claiming that the work done is worth the price fixed by the contract; the fact that the defendant got the benefit of the work done does not relieve the plaintiff from the consequences of the fraud. The court will not countenance the attempt made here in the name of the corporation to recover this money, when it appears from the evidence that Gaynor and Greene are, in effect, the owners of the corporation and will be the beneficiaries of any recovery which may be made.
It appears from the facts found that the defendant never accepted the work of the plaintiff. On the contrary, the defendant insisted that the work did not meet the requirements of the specifications, and payment was refused on that ground. The fact that the work performed by the plaintiff and the materials furnished by it were used by the defendant does not of itself create a liability. The acceptance of such work and materials must have been voluntary. In this case the defendant, from the very nature of the work done, was *197 forced to accept it, and therefore the acceptance was not voluntary and no liability was created. Besides, the contract under which the work was done was fraudulent, and such being the case the plaintiff can not recover. In Dermott v. Jones, 2 Wall. 1, 9, the Supreme Court says: “ When he has been guilty of fraud, or has willfully abandoned the work, leaving it unfinished, he can not recover in any form of action.”
For the reasons above given the petition of the plaintiff must be dismissed. It is so ordered.
Graham, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.