**SUPERMEX, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 91–1192C.**

United States Court of Federal Claims.

Feb. 20, 1996.

cial master's finding.

defendant as a defense to plaintiff's claims, and on defendant's motion for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC) on its counterclaim for treble damages of the amount of a bribe admitted to by Mr. James V. Gonzales, the President of Supermex, to a government official during performance of the contract at issue, and of three other exchanges of money between Mr. Gonzales and a government official, also alleged by the government to have been acts of bribery, all pursuant to 18 U.S.C. § 201(b). In response, plaintiff contends that 28 U.S.C. § 2514 does not require that all the claims asserted by Supermex arising from the contract between Supermex and the Navy must be forfeited. Rather, according to the plaintiff, the court should apply the forfeiture statute only to those claims tainted by the admitted fraud. The plaintiff also argues that summary judgment should not be granted on the counterclaim for treble damages because genuine issues as to material facts persist on defendant's counterclaim.

Richard D. Corona, San Diego, California, for plaintiff.

William K. Olivier and Scott E. Ray, Trial Attorneys, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, with whom were David M. Cohen, Director, and the Assistant Attorney General, for defendant.

### OPINION

HORN, Judge.

Plaintiff, Supermex, Inc. ("Supermex")[1] filed this action, which included three separate causes of action for damages arising from a construction contract with the United States Department of the Navy, in the amount of one million, one hundred forty-six thousand, five hundred thirty-nine dollars and thirteen cents ($1,146,539.13). This case comes before the court for review of defendant's Special Plea in Fraud, pursuant to 28 U.S.C. § 2514 (1988 & Supp.1992), offered by

### FACTS

On January 19, 1989, Supermex was awarded Contract No. N62474-86-C-0560 by the Navy to construct the Detection Systems Laboratory at the Naval Weapons Center, China Lake, California, and to perform related modifications to existing buildings and grounds. Supermex submitted a competitive bid and was awarded the contract in the sum of four million, two hundred fifty thousand dollars ($4,250,000), as a small business set-aside. During performance of the contract, Mr. James V. Gonzales was the President of Supermex.

On or about February 5, 1990, Supermex submitted a request for an equitable adjustment to cover additional costs incurred for providing continuous inspection at the work site to the contracting officer. The claim was certified on August 6, 1990, for two hundred fifty-four thousand, two hundred dollars and eighty cents ($254,200.80). Plaintiff alleges that the claim was submitted by Supermex

---

1. The court refers to plaintiff as "Supermex" based on the caption used by plaintiff in the original complaint filed on June 4, 1991. The court does so despite inconsistent references to itself as "Supermex" and as "Super Mex," in filings submitted to this court by plaintiff.

on behalf of Supermex's subcontractor, American Engineering Laboratories (AEL), and included in Supermex's overhead costs. The claim was denied by the contracting officer.

On March 8, 1991, Supermex submitted another claim to the contracting officer, seeking recovery of three hundred eighty-four thousand, five hundred thirty-seven dollars and seventy-one cents ($384,537.71) in liquidated damages, which had been withheld by the Navy. Plaintiff claims that the defendant wrongfully withheld the liquidated damages without justification, while the defendant asserts that they were withheld due to Supermex's delay in the performance of the contract. The liquidated damages were assessed at the rate of two thousand, three hundred dollars ($2,300.00) per day.

On November 5, 1993, Supermex submitted an additional claim to the contracting officer to recover costs, totaling five hundred seven thousand, eight hundred dollars and sixty-two cents ($507,800.62), which Supermex asserted were incurred due to alleged changed conditions, unforeseen site conditions, delays, and extended home and field office overhead. The contracting officer responded that the Navy needed more information from Supermex before the claim could be properly addressed. Plaintiff disagrees with defendant's contention that Supermex did not subsequently provide the requested information. Rather, plaintiff maintains that Supermex submitted a proper claim and provided all the necessary information in order to allow the contracting officer to issue a final decision. Following plaintiff's determination that the contracting officer's failure to issue a final decision amounted to a deemed denial of its claim, plaintiff brought a direct action to the United States Court of Federal Claims.

On January 23, 1991, during the performance of the contract, Mr. Gonzales, the President of Supermex, gave five hundred dollars ($500.00) to Lieutenant James Pace, the Navy's Assistant Residence Officer in Charge of Construction (AROICC) at the same time that Lt. Pace gave Mr. Gonzalez a packet of documents relating to the contract, which Mr. Gonzales had requested. Plaintiff alleges that the money constituted a loan, which Lt. Pace had solicited from Mr. Gonzales, and which he claimed he needed in order to pay his divorce attorney. Plaintiff alleges that the alleged loan and exchange of documents were unrelated. According to the plaintiff, Mr. Gonzales believed Lt. Pace to be a friend, and they were a members of the same religious community.

On February 7, 1991, also during the performance of the contract, Mr. Gonzales gave the AROICC another five hundred dollars ($500.00). Again, plaintiff contends that this transfer of money was a loan to pay attorney's fees for what Lt. Pace allegedly described as a messy divorce. On March 13, 1991, still during the performance of the contract, Mr. Gonzales gave the AROICC another payment, this time of one thousand dollars ($1,000.00), specifically in exchange for the elimination of the need for a contractor quality control representative to be present at the job site. The facts summarizing the March 13, 1991 transfer are undisputed by the plaintiff and were the subject of Mr. Gonzales' guilty plea to bribery of a public official pursuant to 18 U.S.C. § 201(b)(1). On March 28, 1991, Mr. Gonzales gave the AROICC another payment of one thousand dollars ($1,000.00), likewise during the performance of the contract. Again, plaintiff insists the transfer was a loan to help Lt. Pace pay legal fees.

On May 30, 1991, Mr. Gonzales was indicted on four counts of bribery, in violation of 18 U.S.C. § 201(b)(1), in the United States District Court for the Eastern District of California. On September 3, 1991, Mr. Gonzales pled guilty to count three of the indictment, which charged him with bribery of a public official in violation of 18 U.S.C. § 201(b)(1), as a result of the March 31, 1991 money transfer. Plaintiff contends that Mr. Gonzales entered into the plea agreement on the advice of counsel.

In the Memorandum of the Plea Agreement, the section titled "Factual Basis" provides:

> The defendant will plead guilty because he is in fact guilty of the crime set forth in Count Three. The defendant also agrees that the following are the facts of this case,

although he acknowledges that, as to other facts, the parties may disagree:

> The defendant is the President of Super Mex, Inc. who contracted with the United States to construct a detection systems laboratory aboard the Naval Weapons Center China Lake, located within the State and Eastern District of California.
>
> Lt. James Michael Pace is a public official being employed as an Assistant Resident Officer In Charge of Construction by the United States Navy, Civil Engineering Corps. Lt. Pace was the government official overseeing the Super Mex, Inc. contract aboard the Naval Weapons Center at China Lake.
>
> The United States required that a Contractor Quality Control Representative be present on the construction site during the course of the contract or until such time as the government determined that such representative was no longer needed. On or about March 13, 1991, the defendant did corruptly offer and give one thousand dollars ($1,000) to Lt. Pace to induce Lt. Pace to eliminate the need for the Contractor Quality Control Representative to be present on the construction site at the Naval Weapons Center China Lake.

Memorandum of Plea Agreement at 3, *United States v. Gonzales,* (No. CR–F–91–071) (E.D.CA., filed September 3, 1991).

On November 25, 1991, Mr. Gonzales was sentenced to ten months in prison and fined five thousand dollars ($5,000.00), payable within six months of release. Upon release from prison, Mr. Gonzales was placed on a two-year term of supervised probation.

Plaintiff filed its original complaint in this court on June 4, 1991, seeking damages for denied equitable adjustments on the contract totaling three hundred eighty-four thousand, five hundred thirty-seven dollars and seventy-one cents ($384,537.71). Defendant filed its answer on October 11, 1991. Subsequent to Mr. Gonzales's guilty plea and sentencing, on February 21, 1993, defendant filed an amended answer, which included a Special Plea in Fraud, under 28 U.S.C. § 2514, calling for the dismissal, with prejudice, of all plaintiff's claims, and a counterclaim for civil damages in the form of treble damages of the amount of the bribes and alleged bribes offered to Lt. Pace by Mr. Gonzales.

On October 19, 1993, plaintiff filed its first amended complaint which incorporated the original complaint and added a second claim for damages in the sum of two hundred fifty-four thousand, two hundred dollars and eighty cents ($254,200.80). Defendant filed its answer to the first amended complaint on January 21, 1994, which repeated the counterclaims listed in the defendant's amended answer and the affirmative defenses asserting that plaintiff's claims are barred by fraud and illegality.

On August 19, 1994, plaintiff filed its second amended complaint. This complaint incorporated the first amended complaint and added a third cause of action requesting damages totaling five hundred seven thousand, eight hundred dollars and sixty-two cents ($507,800.62). Defendant's answer to the second amended complaint, again including affirmative defenses and counterclaims, was filed on August 24, 1994.

Subsequently, defendant filed a motion for summary judgment based upon the government's Special Plea in Fraud, pursuant to 28 U.S.C. § 2514, and for the treble damages claimed in its counterclaim. Defendant argues that plaintiff's perpetration of fraud upon the United States during contract performance should result in the forfeiture of all plaintiff's claims against the defendant in relation to Contract No. N62474–86–C–0560. Defendant also requests treble damages of the amount of money which changed hands between Mr. Gonzales and Lt. Pace, but at a minimum, treble damages for the one-thousand dollar ($1,000.00) payment involved in the March 13, 1991 transaction acknowledged in the plea for violation of 18 U.S.C. § 201(b)(1). Plaintiff filed an opposition to defendant's motion for summary judgment alleging that the defendant had misinterpreted 28 U.S.C. § 2514 and that genuine issues of material fact exist regarding defendant's counterclaim for damages.

## DISCUSSION

It is clear that in addition to the claims brought by the plaintiff in its complaint, this court "has jurisdiction under 28 U.S.C. §§ 1503 [2] and 2508 [3] to consider counterclaims raised by the government." *Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540, 542 (Fed.Cir.1988) (citing *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946)). The explanation provided by this court's predecessor, the United States Court of Claims, in *Brown v. United States*, 207 Ct.Cl. 768, 524 F.2d 693 (1975), offers insight into this court's authority to adjudicate the government's counterclaims. The court in *Brown* stated as follows:

Prior case law demonstrates that Section 1503 prevails in situations such as this one and, therefore, that defendant should be allowed an opportunity to have its counterclaim adjudicated in this forum. In an early decision regarding the jurisdiction of this court, the Supreme Court explained the intent and scope of Section 1503 as follows:

[Suits against the government in the Court of Claims] are not suits at common law within its true meaning. The government cannot be sued, except with its own consent. It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits. It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States. Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the government in the special court organized for that purpose, he may be met with a set-off, counter-claim, or other demand of the government, upon which judgment may go against him, without the intervention of a jury, if the court, upon the whole case, is of opinion that the government is entitled to such judgment. If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the government to the exercise of the privilege.

*McElrath v. United States*, 102 U.S. 426, 440 [26 L.Ed. 189] (1880). More recently, when confronted with a similar jurisdictional question in *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 539 [66 S.Ct. 729, 730, 90 L.Ed. 835] (1946), the Supreme Court concluded that the purpose of the counterclaim jurisdiction was

* * * to permit the Government, when sued in the Court of Claims, to have determined in a single suit all questions which involved mutual obligations between the Government and a claimant against it. Legislation of this kind has long been favored and encouraged because of a belief that it accomplishes among other things such useful purposes as avoidance of "circuity of action, inconvenience, expense, consumption of the courts' time, and injustice." *Chicago & N.W.R. Co. v. Lindell*, 281 U.S. 14, 17 [50 S.Ct. 200, 201, 74 L.Ed. 670] and cases cited.

*Brown v. United States*, 207 Ct.Cl. at 785–86, 524 F.2d at 703.

In the instant case, adjudication by this court of the government's counterclaims properly serves the policies of 28 U.S.C. §§ 1503 and 2508. Therefore, this court finds that adjudication of the government's counterclaim for treble damages based on the exchanges of money between the President of Supermex and the government AR-

2. 28 U.S.C. § 1503, *as amended* (1992), provides:
 The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court.

3. 28 U.S.C. § 2508, *as amended* (1992), provides:
 Upon the trial of any suit in the United States Court of Federal Claims in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.
 If upon the whole case it finds that the plaintiff is indebted to the United States it shall render judgment to that effect, and such judgment shall be final and reviewable.
 The transcript of such judgment, filed in the clerk's office of any district court, shall be entered upon the records and shall be enforceable as other judgments.

OICC during contract performance is within the jurisdiction of this court. Moreover, neither party disputes the court's jurisdiction to review defendant's defense of fraud pursuant to 28 U.S.C. § 2514. Accordingly, the court proceeds to examine the merits of the cross-motions for summary judgment.

■ Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[4] Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ Rule 56(c) of the Rules of the United States Court of Federal Claims (RCFC) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir. 1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Rust Communications Group v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute

about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the non moving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

■ When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd without op.*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–2512. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Stated otherwise, if the nonmoving party cannot present the evidence to support its case under any scenario, then there should be no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

■ If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed. Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984),

---

4. In general, the rules of this court are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court, including Rule 56.

*See Jay v. Sec'y of DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993; *Imperial Van Lines Int'l Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl. Ct. 67, 70 (1989).

**38**

*cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

 The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs.,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assocs.,* 20 Cl.Ct. at 679.

 Pursuant to Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to demonstrate that a genuine issue for trial exists. *Id.*

In the case at bar, defendant invokes the Special Plea in Fraud, pursuant to 28 U.S.C. § 2514, as a defense to the claims contained in plaintiff's complaint. Plaintiff, however, contends that defendant misinterprets 28 U.S.C. § 2514, and that the statute does not call for the forfeiture of all of plaintiff's claims against the government, even upon a finding of fraud or attempted fraud during contract performance. Plaintiff argues that those parts of plaintiff's claims which are not related to the established fraud may be allowed, even if some of the claims are rendered forfeited. The statute in question, 28 U.S.C. § 2514, reads:

A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

In such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture.

28 U.S.C. § 2514.

 In determining the purpose and intent of 28 U.S.C. § 2514, this court is guided by the words offered by the United States Court of Appeals for the Federal Circuit regarding how to approach statutory interpretation, as follows:

Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction* (4th ed.). First, " ' "[t]he starting point in every case involving construction of a statute is the language itself." ' " *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). Second, where a statute states what a term "means" then all other meanings not stated are excluded. *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States,* 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States,* 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood,* [487] U.S. [552], 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,*

489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Moreover, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Department of Commerce*, 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), *reh'g denied*, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). In fact, a court should resort to legislative history only if:

> ... a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan*, 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purpose of the statute, *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustees of Indiana University v. United States*, 618 F.2d 736, 739, 223 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon*, 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid v. Department of Commerce*, 793 F.2d at 281–82. Accepted principles of statutory construction also provide that courts must interpret a statute as a whole. *Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989). To this effect, the Supreme Court has written:

> On numerous occasions we have noted that " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Kelly v. Robinson*, 479 U.S. 36, 43 [107 S.Ct. 353, 358, 93 L.Ed.2d 216] (1986), quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221 [106 S.Ct. 2485, 2493, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285 [76 S.Ct. 349, 359, 100 L.Ed. 309] (1956) (in turn quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122 [12 L.Ed. 1009] (1849))).

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). *See* Sutherland Stat. Const. §§ 46.05, 46.06 (5th ed. 1992). Otherwise stated, courts must " 'give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 394, 27 L.Ed. 431 (1883)), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *Labor Bd. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937)).

 In construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless or superfluous. *Boise Cascade Corp. v. United States E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991). *See* Sutherland Stat. Const. § 46.06 (5th ed. 1992). The meaning of statutory language depends on context, and a statute should be read as a whole. *King v. Saint Vincent's Hosp.*, 502 U.S. 215, 220–22, 112 S.Ct. 570, 574, 116 L.Ed.2d 578, 586 (1991) (Souter, J.) (citing *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19, 26, 109 S.Ct. 278, 282, 102 L.Ed.2d 186 (1988)). As stated in *King v. Saint Vincent's Hosp.*, "[w]ords are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *King v. Saint Vincent's Hosp.*, 502 U.S. at 221, 112 S.Ct. at 574 (quoting *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2nd Cir.1941) (L. Hand, J.)). Therefore, when reviewing the statute at issue in this case, this court must construe each part of a statute in connection with all the other sections, so as to produce a harmonious whole. Moreover, common sense requires that the same words used twice in the same act should have the same meaning. *See* Sutherland Stat. Const. § 46.06 (5th ed. 1992).

 This court finds the mandate of the words employed in 28 U.S.C. § 2514 to be clear and unequivocal. The words of the statute make it apparent that a claim against

the United States is to be forfeited if fraud is practiced during contract performance. There is no suggestion in the statute that a contract can be divided up into performance sectors to allow payment of some claims on a corrupted contract while other claims on the same contract are forfeited. Moreover, in the instant case, the act of bribery admitted to by Supermex's President was given for the purpose of eliminating a Contractor Quality Control Representative from the site. The effects of the fraudulent act, therefore, had an effect on every aspect of contract performance, making it virtually impossible to distinguish between tainted and untainted claims.

In *Brown Construction Trades, Inc. v. United States*, 23 Cl.Ct. 214 (1991), the court stated:

> [t]his statute has been held to require the forfeiture of any claim affected by fraud, whether intrinsic to the claim or in the presentment of the claim. *Kamen Soap Prods. Co. v. United States*, 129 Ct.Cl. 619, 641, 124 F.Supp. 608, 620 (1954) ("this statute goes further than merely banning fraudulent claims. It provides for a forfeiture of the claim if any fraud is practiced or attempted to be practiced in proving, establishing or allowing a claim.").

The Court of Claims has ruled that where fraud is committed in the course of a contract to which the suit pertains, it may not isolate the affected part and allow suit to proceed on the remainder. The practice of a fraud on part of a contract condemns the whole. The rule is set out in *Little v. United States*, 138 Ct.Cl. 773, 778, 152 F.Supp. 84, 87–88 (1957):

> It is true that the forfeiture statute [28 U.S.C. § 2514] was not intended to forfeit an otherwise valid claim of a claimant merely because, in some other unrelated transaction, he had defrauded the Government. But where, as in the present case, fraud was committed in regard to the very contract upon which the suit is brought, this court does not have the right to divide the contract and allow recovery on part of it. Since plaintiff's claims are based entirely upon contract V3020V–241, a contract under which he

practiced fraud against the Government, all of his claims under that contract will be forfeited pursuant to 28 U.S.C. § 2514.

Thus, 28 U.S.C. § 2514 requires the forfeiture of all claims arising under a contract tainted by fraud against the Government. *See also New York Mkt. Gardeners' Ass'n. v. United States*, 43 Ct.Cl. 114, 136, 1907 WL 832 (1908). *Brown Construction Trades, Inc. v. United States*, 23 Cl.Ct. at 216. *See Ab–Tech Const., Inc. v. United States*, 31 Fed.Cl. 429, 435–36 (1994), *aff'd*, 57 F.3d 1084 (Fed.Cir.1995).

The court in *New York Market Gardeners' Ass'n. v. United States*, 43 Ct.Cl. 114, 136, 1907 WL 832 (1908), also explained that all claims which are part of a contract during which a corrupt or fraudulent practice has occurred, even just on one aspect of the contract, should be forfeited. That court stated as follows:

> The Revised Statutes provide that any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance of any part of any claim against the Government shall *ipso facto* forfeit the same. It would be the duty of the court to declare forfeited the entire contract if the proof certainly established the charge made. Harsh as the statutes are which impose such severe penalties for fraud in making up a claim, it is yet a necessary statute for the protection of the Government, and when such a charge is established this court will not only not hesitate to enforce such penalties but will go to whatever extreme under the law which can be justified by the facts proven. *Id.*

█ Although the statute appears to offer clear guidance, to the extent that an examination of the congressional history of 28 U.S.C. § 2514 might help to further explain the intent of the statute, the court finds the discussion in *O'Brien Gear & Mach. Co. v. United States*, 219 Ct.Cl. 187, 591 F.2d 666 (1979), to be helpful. As noted in the *O'Brien* case, Congress clearly intended 28 U.S.C. § 2514 to guard against fraud in claims brought by a contractor, and that the

statute should act as a preventative measure and a penalty against those who perpetrate or attempt to perpetrate fraud against the government during the course of contract performance. *Id.* at 209, 591 F.2d 666. In *O'Brien Gear & Machine Co.,* the court quoted from the following portions of the legislative history:

'The bill in other respects is well guarded.... [I]t is very wisely provided that if there be any fraud practiced, or attempted to be practiced, upon the part of any claimant against this Government in the demand or establishment of his claim, such act of fraud upon his part shall forever forfeit his claim, no matter what it may be.' Cong.Globe, 37th Cong., 2d Sess. 1674 (1862).

'To provide further against attempts to practice frauds upon the Government in the proof, statement, establishment, or allowance of any claim, the bill contains a provision that a corrupt attempt to practice such frauds shall work a forfeiture of the particular claim. This is meant to visit with merited punishment that corrupted moral sense which regards the Government as always a proper prey for fraudulent rapacity.' Cong.Globe, 37th Cong., 2d Sess. app. 124 (1862).

'I am for protecting the Treasury of the United States. I am for protecting it against unjust claims; and it is because I am for doing that, that I wish to subject every claim to a judicial investigation, that we may not be imposed upon.' Cong. Globe, 37th Cong., 3d Sess. 419 (1863). *See also* Cong.Globe, 37th Cong., 3d Sess. 303–13, 393, 398–99, 401, 413, 417–18, 420 (1863); H.R.Rep. No. 34, 37th Cong., 2d Sess. 3 (1862).

*Id.* at 209 n. 7, 591 F.2d 666.

The *O'Brien Gear & Mach. Co. v. United States* court concluded:

The conclusion to be drawn from the legislative history of section 2514, therefore, is that Congress intended by it that every suit brought in the Court of Claims should be subject to the forfeiture provided, on the commission of the specified fraud. This court has faithfully so applied the section. In no case has the court held

section 2514 or its predecessors inapplicable because of the type of claim made, once proof of the requisite fraud was shown. [Citations omitted.]

*Id.* at 212, 591 F.2d 666.

Plaintiff cites to *Branch Banking & Trust Co. v. United States,* 115 Ct.Cl. 341, 87 F.Supp. 777 (1950), in support of its position that, even conceding the bribery, not all the plaintiff's claims must be considered forfeited, but that the various claims arising under the contract can be evaluated separately, and those unrelated to the bribery can still be considered for payment. Plaintiff's reliance on the *Branch* case, however, is misplaced. As discussed above, in the instant case, the bribery transcends all parts of performance. Moreover, the court in *Little v. United States,* 138 Ct.Cl. 773, 152 F.Supp. 84 (1957), specifically overruled the *Branch* decision, as follows:

It is true that the forfeiture statute quoted above was not intended to forfeit an otherwise valid claim of a claimant merely because, in some other unrelated transaction, he had defrauded the Government. But where, as in the present case, fraud was committed in regard to the very contract upon which the suit is brought, this court does not have the right to divide the contract and allow recovery on part of it. Since plaintiff's claims are based entirely upon contract V3020V–241, a contract under which he practiced fraud against the government, all of his claims under the contract will be forfeited pursuant to 28 U.S.C. § 2514.

We are aware that our decision in this case conflicts, in certain respects, with this court's decision in *Branch Banking & Trust Co., et al. v. United States,* 115 Ct.Cl. 341 [87 F.Supp. 777]. We think it can be distinguished on the facts. However, insofar as that case may be in conflict with the opinion in the present case it is overruled.

*Id.* at 778, 152 F.Supp. 84.

 Defendant also claims that the forfeiture of all claims in this case is further supported by public policy considerations. This court agrees that the forfeiture of

claims that have been tainted by fraud is an appropriate avenue to maintain the integrity of the procurement process. The court in *Brown Construction Trades* discussed the public policy considerations and stated:

> The case law uniformly states that public policy considerations, in particular concern for the integrity of the Government procurement process, preclude the enforcement of contracts tainted by bribery, kickbacks or conflicts of interest. *See, e.g., United States v. Acme Process Equip. Co.,* 385 U.S. 138, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966); *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961); *Joseph Morton Co. v. United States,* 757 F.2d 1273, 1278–79 (Fed.Cir.1985); *K & R Eng'g Co. v. United States,* 222 Ct.Cl. 340, 616 F.2d 469 (1980); *Atlantic Contracting Co. v. United States,* 57 Ct.Cl. 185 [1922 WL 1881] (1922).

*Brown Const. Trades, Inc. v. United States,* 23 Cl.Ct. at 215. Moreover, as stated in *Continental Management,* "[i]n normal course the briber deprives the government of the loyalty of its employees, upon which the government and the public must rely for the impartial and rigorous enforcement of government programs." *Continental Management v. United States,* 208 Ct.Cl. 501, 510, 527 F.2d 613 (1975). Public policy, congressional intent and case precedent all dictate against condoning any fraud or attempts to practice fraud during the course of contract performance. Accordingly, as a matter of public policy, the principle concern is not how much damage was done by the act of bribery to which Mr. Gonzales admitted.

> Rather, it rests with the fact that a corruption in the administration of the contract engenders a suspicion about the integrity of the entire course of dealing. Only through the remedy of nonenforcement can the procurement system free itself of the suspicion of frauds gone undetected.

*Brown Const. Trades,* 23 Cl.Ct. at 215–16. The guilty plea entered into by Mr. Gonzales, Supermex's President, places a stigma upon the contract at issue in this case and on all the claims arising under the contract-in-suit, sufficient to deem plaintiff's claims unenforceable due to public policy considerations.

 Plaintiff also contends that in order to invoke 28 U.S.C. § 2514, the government bears the burden of establishing all the elements of common law fraud. In support, plaintiff cites to *Colorado State Bank of Walsh v. United States,* 18 Cl.Ct. 611, 628–29 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990), and cites to the definition of common law fraud included in *J.P. Stevens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553, 1559 (Fed.Cir.1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). As defined in *J.P. Stevens,* the elements of common law fraud include misrepresentation of a material fact, intent to deceive, justifiable reliance on the misrepresentation by the party deceived, and injury to the party deceived, resulting from reliance on the misrepresentation. *Id.* While it is apparent that the elements of knowledge and intent to deceive are prerequisites to a Special Plea in Fraud, it is not clear that the elements of justifiable reliance and actual damages are also prerequisites to establishing a Special Plea in Fraud pursuant to 28 U.S.C. § 2514. This court believes that in the instant case, 28 U.S.C. § 2514 can be invoked without the need to prove either justifiable reliance by the sovereign or specific evidences of injury to the sovereign. The injury and the damages to the sovereign are presumed in the breach of the bond of public trust. In *Versaggi Shrimp Corp. v. United States,* 28 Fed.Cl. 20 (1993), the court found that subversion of public officers, through acts such as bribery, is never without harm to the state. *Id.* at 25.

 From the case law, it appears that the burden is on the government to establish by clear and convincing evidence that the claimant has committed the fraud alleged. *McCarthy v. United States,* 229 Ct. Cl. 361, 373, 670 F.2d 996, 1003 (1982); *O'Brien Gear & Mach. Co. v. United States,* 219 Ct.Cl. at 199, 591 F.2d at 672; *Miller v. United States,* 213 Ct.Cl. 59, 68, 550 F.2d 17, 22 (1977); *Kamen Soap Prods. Co. v. United States,* 129 Ct.Cl. at 642, 124 F.Supp. at 620; *Young–Montenay, Inc. v. United States,* 15 F.3d 1040, 1042 (Fed.Cir.1994); *McCarthy v. United States,* 229 Ct.Cl. at 373, 670 F.2d at

1003; *O'Brien Gear & Mach. Co. v. United States,* 219 Ct.Cl. at 199, 591 F.2d at 672.[5] In the instant case, however, regardless of whether the defendant must prove any particular elements of fraud, or by what standard the evidence should be judged, plaintiff's claim is barred by 28 U.S.C. § 2514. When James Gonzales, President of Supermex, pled guilty, he admitted to bribing a government official during contract performance, in violation of 18 U.S.C. § 201(b)(1).[6] Therefore, all the required burdens of proof have been satisfied.

 Moreover, federal law also establishes that a guilty plea precludes the relitigation in subsequent civil proceedings of issues admitted in the plea. *See O'Brien,* 219 Ct.Cl. at 198, 591 F.2d at 672 (citing *Commissioner v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Armstrong v. United States,* 173 Ct.Cl. 944, 968–72, 354 F.2d 274, 289–91 (1965); *Hercules Powder Co. v. United States,* 337 F.2d 643, 644, 167 Ct.Cl. 639, 641–42 (1964); *cf. Kowal v. United States,* 412 F.2d 867, 870, 188 Ct.Cl. 631, 636–37 (1969). While plaintiff does not deny that Mr. Gonzales pled guilty to bribing a public official under 18 U.S.C. § 201(b)(1), plaintiff attempts to downplay this fact by stating that Mr. Gonzales entered into the plea on the advice of counsel. The propriety of the advice aside, plaintiff's qualification does not alter in any material way the fact that Mr. Gonzales pled guilty to the crime of bribery committed during performance of the contract at issue in the case before this court. *See Alsco–Harvard Fraud Litigation,* 523 F.Supp. 790, 801 (D.C.Cir., 1981) (holding that it was too late for defendants to engage in after the fact rationaliza-

tions for their admissions in guilty pleas, to suggest that they were unaware of the estoppel effect of said pleas or that the guilty pleas were entered into unknowingly or involuntarily). Moreover, the plea agreement entered into by Mr. Gonzales states that "[t]he defendant will plead guilty because he is in fact guilty of the crime set forth in Count Three" and that Mr. Gonzales "did corruptly offer and give one thousand dollars ($1,000) to Lt. Pace...." Thus, the guilty plea entered by James V. Gonzales constitutes an admission of the act of bribery on March 13, 1991.

 It is also clear that when Mr. Gonzales engaged in the March 13, 1991 act of bribery with Lt. Pace, he was unquestionably acting as Supermex's President, and that, therefore, his acts may be imputed to the corporation. A corporation may be held liable for the acts of its officers. *O'Brien,* 219 Ct.Cl. at 199, 591 F.2d at 672; *Wagner Iron Works v. United States,* 146 Ct.Cl. 334, 337–38, 174 F.Supp. 956, 958 (1959) (citing *Standard Surety & Cas. Co. v. Plantsville Nat. Bank,* 158 F.2d 422 (2nd Cir.1946); *Ralston Purina Co. v. Novak,* 111 F.2d 631 (8th Cir., 1940)).

It is apparent from the record in the instant case that the Navy and the contractor were in disagreement as to whether there was a continuing need for a Contractor Quality Control Representative on the site. The following passage, taken from the September 29, 1994 deposition of James V. Gonzales, attached to defendant's motion, documents these facts:

> son who has been selected to be a public official to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or (C) to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of the lawful duty of such official or person; ... shall be fined not more than three times the monetary equivalent of the thing of value, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.

---

**5.** Although most of the cases which establish the standard of proof arise in the context of fraud committed as part of submission of false claims by the contractor, the standard seems relevant to the case at bar as well.

**6.** 18 U.S.C. § 201(b)(1) provides:
Whoever—(1) directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—(A) to influence any official act; or (B) to influence such public official or per-

Q: Now, why do you believe that the C.Q.C. [Contractor Quality Control Representative] was no longer needed because of the specifications?

A: Because of the fact that the job was completed. I mean, we don't need somebody when they have punch list items such as a crooked switch plate, dust on the fixtures, a stain on the carpet and stuff like that.

In addition, the alleged need to provide continuous on-site inspection was the basis for Supermex's February 5, 1990 request for an equitable adjustment in the amount of two-hundred fifty-four thousand, two-hundred dollars and eighty cents ($254,200.80). Furthermore, the plea agreement clearly establishes the connection between the contractor's concerns about the on-site government official and Mr. Gonzales' fraudulent attempt to solve the problem. The plea agreement conspicuously states that the illegal transfer of money from Mr. Gonzales to Lt. Pace was specifically engineered "to eliminate the need for the Contractor Quality Control Representative to be present on the construction site."

█ In sum, the guilty plea entered into by James Gonzales, pursuant to 18 U.S.C. § 201(b)(1), translates into clear and convincing evidence that Mr. Gonzales, committed an intentional act of fraud upon the United States during performance of the contract at issue on behalf of the plaintiff. Moreover, based on the plea agreement, the plaintiff is estopped from relitigating the fraudulent act of bribery in this court. As a result, Supermex's claims against the government under the contract should be rendered forfeited by this court, pursuant to 28 U.S.C. § 2514.

█ Plaintiff also argues in its brief that the claims of its subcontractor, American Engineering Laboratories, Inc. (AEL), should survive regardless of the fraud perpetrated by plaintiff's President because AEL committed no fraud. It is clear, however, that "[t]he government consents to be sued only by those with whom it has privity of contract, which it does not have with subcontractors." *Erickson Air Crane Co. of Washington, Inc. v. United States*, 731 F.2d 810, 813 (Fed.Cir. 1984). A subcontractor such as AEL does not possess the privity required to sue the

government directly. The ability of subcontractors to recover damages from the government is governed by a line of decisions which can be traced back to *Severin v. United States*, 99 Ct.Cl. 435, 1943 WL 4198 (1943), *cert. denied*, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). In *Severin*, the court stated that:

> The subcontractor could not sue the Government since it has not consented to be sued except, so far as relevant to this case, for breach of contract. But the Government had no contract with the subcontractor, hence it is not liable to, nor suable by him.

*Id.* at 442 (citations omitted). *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1547 (Fed.Cir.1983); *George Hyman Const. Co. v. United States*, 30 Fed.Cl. 170, 173 (1993), *aff'd*, 39 F.3d 1197 (Fed.Cir.1994). In the instant case, when the prime contractor's claims have been forfeited pursuant to 28 U.S.C. § 2514, it is abundantly clear that Supermex may not sue as the plaintiff on behalf of a subcontractor, and that the subcontractor is in no position to sue the United States on its own behalf. Whatever liabilities may exist between AEL and Supermex, they do not concern the defendant in this case.

In its pleadings, defendant also has counterclaimed against plaintiff Supermex for treble damages pursuant to 18 U.S.C. § 201. Defendant claims it is entitled to civil damages in addition to the criminal penalties already imposed against James Gonzales following his guilty plea to a violation of 18 U.S.C. § 201(b), which consisted of ten months incarceration, supervised release following incarceration for two years, and a five-thousand dollar ($5,000.00) fine. The government's counterclaim in this case requests treble damages of nine-thousand dollars ($9,000.00), totaling three times the three-thousand dollars ($3,000.00) transferred from Supermex's President to the government AROICC, during the four alleged acts of bribery. In the alternative, defendant argues that "if the Court determines that there are disputed issues of fact as to whether three of the four payments that were made by Mr. Gonzales to Lt. Pace

constituted bribes, the government is entitled, at least, to the sum of $1,000 in civil penalties, which is the amount of the one payment for which Mr. Gonzales pled guilty to bribery, and that amount should be trebled." In its filings with the court, plaintiff only touches on the damages issue very briefly, by stating: "Defendant has failed to show by clear and convincing evidence that the three other loans to Lt. Pace satisfy any of the requisite elements of common law fraud."

 Courts have the power to invoke civil penalties in an effort to realize the full intention of a criminal statute, in this case, 18 U.S.C. § 201(b). *Continental Management, Inc. v. United States,* 208 Ct.Cl. at 509–514, 527 F.2d 613. In *Continental Management,* the court, also analyzing a section of 18 U.S.C. § 201, specifically stated: "The purpose of the bribery statute—the protection of the public from the corruption of public servants and the evil consequences of that corruption—will obviously be furthered by the recognition of a civil remedy." *Id.* at 509, 527 F.2d 613. Depending on the facts of the particular case, the award of civil penalty should be considered neither penal nor unjust. Rather, the imposition of civil monetary sanctions in this situation is "remedial, designed to compensate the government for the harm it has suffered." *Id.* at 513, 527 F.2d 613. The *Continental Management* court also stated that: "The key to whether a recovery would be penal is whether the claimed amount is unreasonable or excessive." *Id.* at 513, 527 F.2d 613. *See generally United States v. Mississippi Valley Co.,* 364 U.S. 520, 563, 81 S.Ct. 294, 315, 5 L.Ed.2d 268 (1961). Otherwise stated, a nonstatutory civil remedy can be considered not a penalty, but, rather, a restoration of money to the government for related costs, provided the remedy "bears any rational relation to the damages suffered by the Government." *United States v. Halper,* 490 U.S. 435, 453, 109 S.Ct. 1892, 1904, 104 L.Ed.2d 487 (1989) (Kennedy, J., concurring).

 Although it may be difficult in some cases to determine the appropriate amount of damages, nothing more is required than "to show the fact and amount of the bribes . . . ."

*Continental Management, Inc. v. United States,* 208 Ct.Cl. at 510, 527 F.2d at 618; *see also Peck Iron and Metal Co., Inc. v. United States,* 221 Ct.Cl. 37, 603 F.2d 171 (1979) (stating that once damages are an established fact, "the best approximation of damages based on the best available evidence" is all that is required for their calculation. *Id.* at 44, 603 F.2d 171). The *Continental Management* court further stated:

> On this premise the amount of the bribe provides a reasonable measure of damage, in the absence of a more precise yardstick. That is, after all, the value the plaintiff placed on their corruption of the defendant's employees; the other side of the coin is that the plaintiffs hoped and expected to benefit by more than the sum of the bribes. It is therefore fair to use that total as the measure of an injury which is probable in its impact but uncertain in its mathematical calculations.

*Continental Management,* 208 Ct.Cl. at 512, 527 F.2d 613.

For the first time, at oral argument, plaintiff argued that the imposition of a civil fine by this court, after Mr. Gonzales, Supermex's President, had already received a prison sentence and a fine following his plea in the criminal proceedings, would be constitutionally impermissible under the Double Jeopardy Clause of the Fifth Amendment to the Constitution. Plaintiff's argument that civil penalties, in addition to the criminal sanctions already imposed, constitutes double jeopardy, however, misinterprets the teachings of the United States Supreme Court in *United States v. Halper,* mentioned by plaintiff's counsel during the oral argument before this court.

 In *United States v. Halper,* the Supreme Court held that the constitutional protection against double jeopardy is applicable to three distinct situations. These include prosecution for the identical crime following acquittal, prosecution for the identical crime following conviction, and numerous punishments for the identical crime. *United States v. Halper,* 490 U.S. at 440, 109 S.Ct. at 1897. Regarding double jeopardy for numerous

punishments for the identical crime, the *Halper* court concluded the following:

> the government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis.

*Id.* at 446, 109 S.Ct. at 1900; *see Rex Trailer Co. v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956); *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938).

In *Halper,* the issue was not, as plaintiff contends, whether or not additional civil sanctions may be imposed in addition to criminal penalties. Rather, the main issue in *Halper* was "whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." *United States v. Halper,* 490 U.S. at 443, 109 S.Ct. at 1899. Indeed, the Supreme Court acknowledged the ability of a court to impose a civil sanction in such situations, free from double jeopardy problems. *Id.* at 446, 109 S.Ct. at 1900; *see United States v. Millan,* 2 F.3d 17, 20 (2d Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994) (recognizing that "it is well established that Congress may impose multiple punishments for a single crime without violating the Constitution's double jeopardy restrictions"). Furthermore, the Court found that civil remedies are "remedial, providing reimbursement to the Government for investigatory and other costs of ... fraud." *United States v. Halper,* 490 U.S. at 442–43, 109 S.Ct. at 1899. Moreover, the Court added that, if the sanction is not so severe as to constitute a punishment, then no double jeopardy exists " 'in the civil enforcement of a remedial sanction....' " *Id.* at 443, 109 S.Ct. at 1899 (quoting *Helvering v. Mitchell,* 303 U.S. at 404, 58 S.Ct. at 635–36; *see also United States v. Barnette,* 10 F.3d 1553, 1560 (11th Cir., 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 74, 130 L.Ed.2d 28 (1994) (finding that the Double Jeopardy Clause would not bar recovery by the government of $50 million where the government's total loss was only $15 million)). It is apparent that "one act may give rise to both civil and criminal liability." *Continental Management, Inc. v. United States,* 208 Ct.Cl. at 514, 527 F.2d at 620 (citations omitted).

▮ Defendant has requested treble damages of the total amount of money which was transferred to Lt. Pace by Mr. Gonzales. Defendant argues that this sum should be calculated by adding all four payments together, which would total three thousand dollars ($3,000.00), and trebling that amount to equal nine thousand dollars ($9,000.00), in accordance with the dictates of 18 U.S.C. § 201(b). It is established in the record that at least one bribe took place, as evidenced in the statement included in the plea agreement that Mr. Gonzales "did corruptly offer and give one thousand dollars ($1,000.00) to Lt. Pace to induce Lt. Pace to eliminate the need for the Contractor Quality Control Representative to be present on the construction site at the Naval Weapons Center China Lake." Consequently, this court finds no genuine issues of material fact regarding the illegal money transfer between Mr. Gonzales and Lt. Pace, which occurred on March 13, 1991. As a result, this court will grant summary judgment based on the March 13, 1991 transfer.

The court also exercises its discretion to assess civil penalties against the plaintiff in the amount of three thousand dollars ($3,000.00). This amount is reasonable and not excessive, and serves the purposes articulated in 18 U.S.C. § 201(b). It provides the government with, at least, some degree of restoration for the damages done as a result of the bribery and fraud perpetrated by the plaintiff during contract performance, and may help to help restore the public confidence in the procurement process.

▮ This court finds, however, that genuine issues as to material facts persist regarding the other three alleged bribery transactions between Mr. Gonzales and Lt. Pace. These alleged bribes have not been adjudicated. The dismissal of those counts of the indictment does not serve as an adjudication of the events alleged in the indictment, rather it reflects an exercise of prosecutorial

discretion not to go forward with those charges. Consequently, regarding the January 23, 1991, the February 7, 1991, and the March 28, 1991 transfers of money from Mr. Gonzales to Lt. Pace, this court finds that genuine issues of material facts exist, and that summary judgment must be denied on defendant's counterclaims for treble damages based on events occurring on those dates.

## CONCLUSION

The evidence is clear and convincing that Supermex engaged in fraud upon the United States during performance of the contract pursuant to which plaintiff has filed claims with the United States for monies allegedly owed. Therefore, pursuant to 28 U.S.C. § 2514, this court finds any and all of Supermex's claims, which arose during contract performance on Contract No. N62474–86–C–0560, are forfeited. Defendant's motion for summary judgment on the Special Plea in Fraud is **GRANTED.** Furthermore, the government is entitled to recover three thousand dollars ($3,000.00) in civil damages, as restoration for the bribe embodied in the plea agreement entered into by James Gonzales, Supermex's President. Therefore, defendant's motion for summary judgment on the treble damages on the counterclaim for bribery in relation to the March 13, 1991 transfer, which is the subject of that plea, is **GRANTED.** Defendant's motion for summary judgment, regarding the request for treble damages on the three other transfers of money between Supermex's President and Lt. Pace, is **DENIED,** because material issues of fact remain in dispute regarding those three other monetary transfers.

IT IS SO ORDERED.