BARREN ISLAND MARINA, INC., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 96–570 C.

United States Court of Federal Claims.

July 9, 1999.

Francis J. Murray, Rockville Centre, NY, for plaintiff.

C. Coleman Bird, with whom were Assistant Attorney General Frank W. Hunger and David M. Cohen, Washington, DC, for defendant. Anthony R. Conte, Department of the Interior, of counsel.

## OPINION and ORDER

TURNER, Judge.

This case, arising from a marina concession contract with the National Park Service, was initiated in May 1995 in the United States District Court for the Eastern District

of New York and was transferred to this court in May 1996. Thereupon, plaintiff filed, on October 10, 1996, an amended complaint asserting claims in six counts.

This opinion addresses defendant's motion filed on July 30, 1997 to dismiss three counts of the amended complaint for lack of subject-matter jurisdiction and for summary judgment on the remaining three counts. We conclude that to the extent defendant seeks to dismiss three counts for lack of jurisdiction, the motion must be denied, but we further conclude that defendant is entitled to summary judgment with respect to all counts of the amended complaint.[1]

## I

The following is undisputed. Barren Island Marina, Inc., a New York corporation, executed a contract with the National Park Service (NPS) to construct and operate a marina in the Jamaica Bay Unit of the Gateway National Recreation Area in Brooklyn, New York. Amend.Compl., ¶¶ 5, 6. The term of the contract was for ten years commencing January 1, 1979. *Id.,* ¶ 6. The contract was informally extended until March 31, 1995. *Id.,* ¶ 12.

While performing under the contract, plaintiff, through its president and sole shareholder, Theodore A. Prakopé, knowingly submitted false financial reports to NPS and bribed a NPS deputy director. Def. Prop.Find. of Fact, ¶¶ 5–12; Pl.Stat. of Genuine Issues, ¶¶ 5–12. In April 1995, defendant assumed control of the marina and hired a temporary operator. Amend.Compl., ¶ 17.

The six counts in plaintiff's amended complaint contain the following assertions:

1. In the first count, plaintiff says that defendant failed to compensate plaintiff for the fair value of its improvements at the marina as required by the contract and, further, prevented it from "negotiat[ing] with a successor concessioner for the value of its compensable interests in the marina." *Id.,* ¶¶ 24, 26–31.

2. In the second count, plaintiff asserts that defendant failed to submit to arbitra-

tion, as required by the contract, to determine the fair value of plaintiff's property. *Id.,* ¶ 38.

3. In the third count, plaintiff asserts that defendant failed to obtain its consent when it hired a "temporary operator" and, subsequently, failed to compensate it for the use of its property by the temporary operator as is required by the contract. *Id.,* ¶¶ 40–45.

4. In the fourth count, plaintiff asserts that defendant breached its duty to maintain the marina and plaintiff's personal property. *Id.,* ¶¶ 46–49.

5. The fifth count asserts that defendant failed to compensate plaintiff for monies defendant received on delinquent accounts. *Id.,* ¶¶ 50–52.

6. In a sixth count, plaintiff asserts that

> Defendant's breach of the Concession Contract, and its refusal to issue [a] Statement of Requirements for a new concession contract, or to pay Plaintiff for its compensable interests at the marina, for the use of its personal property at the marina, for the wasting of its assets, or for the money Defendant received on Plaintiff's behalf, has led to the destruction of Plaintiff as an ongoing business concern, and the loss of its credit and financial viability.... Wherefore, Plaintiff seeks damages ... plus interest ... on this claim for relief.

*Id.,* ¶¶ 53–54. (Although asserted as a separate, sixth count and designated a "claim for relief," we believe that this sixth count is, more precisely, a prayer for consequential damages rather than a separate ground for relief.)

Defendant answered the amended complaint and filed a special plea in fraud on January 8, 1997. (Defendant filed, on March 5, 1998, an amended answer, counter-claim and a renewed special plea in fraud.) The case currently stands on defendant's motion to dismiss filed on July 30, 1997.

---

1. In an amended answer filed on March 5, 1998, defendant asserted a counter-claim. This opin-ion does not directly address or resolve defendant's counter-claim.

## II

Defendant argues that because plaintiff, through its president and sole shareholder, knowingly submitted false financial reports to NPS and bribed a NPS deputy director, plaintiff's first, second and third counts should be forfeited pursuant to 28 U.S.C. § 2514. Def.Mot. (7/30/97) at 10–16. These counts are addressed in Part III below concerning defendant's plea in fraud.

Defendant further argues that plaintiff's other claims should be dismissed for lack of subject-matter jurisdiction because the fourth and sixth counts sound in tort and the fifth count is based upon an implied-in-law contract. *Id.* at 6–9.

In its fourth claim for relief, plaintiff alleges that defendant failed to maintain and protect plaintiff's property at the marina after plaintiff was terminated as concessioner. Amend.Compl., ¶¶ 46–49. In its sixth claim, plaintiff alleges that the government's breach "led to the destruction of Plaintiff as an ongoing business entity, and the loss of its credit and financial viability." *Id.,* ¶ 53. Defendant asserts that this court does not have subject-matter jurisdiction to adjudicate these claims because they are claims for waste which sounds in tort. Def.Mot. (7/30/97) at 6–8. Plaintiff alleges in its fifth claim for relief that defendant received payment on delinquent accounts "which were due and owing to Plaintiff." Amend.Compl. (10/10/96), ¶ 50. Defendant argues that this court lacks subject-matter jurisdiction over count five because the claim for "money had and received" is based upon an implied-in-law contract. Def.Mot. (7/30/97) at 8–9.

Plaintiff counter-argues that these claims are within this court's jurisdiction because they are based upon the Fifth Amendment of the United States Constitution, the National Park System Concessions Policy Act (CPA), 16 U.S.C. §§ 20 – 20g, and its Concession Contract with the government. We agree that we have jurisdiction over counts four, five and six.

■ While assertions of waste may sound in tort, the claims in counts four and six are grounded in the contract-in-suit just as are the claims in counts one, two and

three and, consequently, fall within our subject-matter jurisdiction. Similarly, we conclude that, in the context of this case, count five asserts a claim grounded on the Concession Contract and is not intended to be a stand-alone claim based on an unrelated implied-in-law contract. Consequently, we also have subject-matter jurisdiction over count five.

## III

The pivotal issue presented by defendant's motion for partial summary judgment is whether plaintiff can maintain any claim against the government arising out of or relating to its contract with NPS in light of the forfeiture provisions of 28 U.S.C. § 2514, which provides:

> A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

> In such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture.

In this case, it is undisputed that Theodore A. Prakope, the president and sole shareholder of plaintiff corporation, committed fraud under the contract by submitting false annual financial reports. Def.Mot. (7/31/97), Appendix (Transcript of Criminal Cause for Pleading) at 58–64; Def.Prop.Find. of Fact, ¶ 5; Pl.Stat. of Genuine Issues, ¶ 5. When Prakope committed fraud he was acting as president, and his conduct is imputed to plaintiff. *See O'Brien Gear & Machine Co. v. United States,* 219 Ct.Cl. 187, 199, 591 F.2d 666, 672 (1979); *Supermex, Inc. v. United States,* 35 Fed.Cl. 29, 43 (1996).

■ Once a contract is tainted by fraud, a contractor may not recover for *any* claim arising under the contract even when the particular claim is not directly related to the fraud. *Little v. United States,* 138 Ct.Cl. 773, 778, 152 F.Supp. 84, 87 (1957). Contrary to plaintiff's argument, there is no need for a nexus between the fraud and the claims asserted. *Id.*

Based on the *Little* case, there is no question that all claims arising under the contract are subject to forfeiture. Plaintiff alleges a breach of the Concession Contract in counts one, two and three. Thus, all three of those counts clearly arise under the contract. Amend.Compl., ¶¶ 30, 38, 44. Plaintiff's fourth claim—asserting that the government breached its duty to properly maintain plaintiff's property—is also grounded in the Concession Contract. Any duty placed on the government would have arisen from the contractual language which gave the government the right to enter the property but "not so as to destroy or unreasonably interfere with . . . such lands or the improvements thereon." Amend.Compl., Tab 1 (Concession Contract) at 6. Plaintiff's fifth claim, for recovery of the monies defendant received on delinquent accounts, similarly is grounded in the contract. The government's seizure of plaintiff's property was pursuant to its right under the contract to recover a franchise fee. *Id.* at 8. Thus, plaintiff's claim for the recovery of such property also arises out of the contract. Finally, as set forth in Part I above, we view count six of the amended complaint as a claim for consequential damages arising from other contract claims and, thus, also subject to forfeiture.

## IV

Ordinarily, under the *Little* case, claims arising from the Concession Contract must be forfeited. However, plaintiff asserts that applying the forfeiture provisions of 28 U.S.C. § 2514 in this case would violate the Double Jeopardy Clause of the Fifth Amendment, the Excessive Fines Clause of the Eighth Amendment and the Concessions Policy Act, 16 U.S.C. § 20 – 20g. *See* Pl.Resp. (10/7/97) at 25–28; Pl. Sur-reply (2/18/98) at 11–20; Pl. Answer (4/23/98), ¶¶ 33 & 34.

## A

▮ The Double Jeopardy Clause provides that no "person [shall] be subject [to] the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Clause protects only against the imposition of *multiple criminal* punishments for the same offense . . . and then only when such occurs in successive proceedings." *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (emphasis added). With respect to this case, we note that, while plaintiff's president has been convicted and fined for the criminal acts he committed while performing under the contract, *see* Def. Prop.Find. of Fact, ¶¶ 5–12 and Pl.Stat. of Genuine Issues, ¶¶ 5–12, plaintiff corporation has not been subject to criminal or civil proceedings.[2] Plaintiff disputes this, arguing, *inter alia,* that it stands in the shoes of its president for purposes of double jeopardy because, if the criminal misconduct of the president is imputed to the company for purposes of forfeiture, the criminal punishment of the president should be imputed to the company for purposes of double jeopardy. Pl. Sur-reply (2/18/98) at 15. Plaintiff cites no authority for this proposition, and we know of none. For these reasons, we conclude that the double jeopardy clause does not prevent forfeiture of plaintiff's claims.

## B

▮ The Eighth Amendment provides that "excessive fines" shall not be imposed. U.S. Const. amend. VIII. In *Austin v. United States,* 509 U.S. 602, 604, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held that the excessive fines clause applies to *in rem* civil forfeitures. In doing so, the court expressly held that the application of the excessive fines clause is not limited to criminal proceedings. "[T]he question is not, as the United States would have it, whether forfeiture under [21 U.S.C.] §§ 881(a)(4) and (a)(7)[3] is civil or criminal, but rather whether it is punishment." *Id.* at 610, 113 S.Ct. 2801.

---

2. *Hudson* states that a "civil remedy" may be considered a "criminal penalty" for purposes of the Double Jeopardy Clause if certain factors are met by "only the clearest proof." 522 U.S. at 100, 118 S.Ct. 488 (citations omitted). *Hudson* disavowed the Court's reasoning in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in part, for failing to focus

on the "threshold question: whether the successive punishment . . . is a 'criminal' punishment." *Id.* at 102, 109 S.Ct. 1892.

3. The statute cited is the Comprehensive Drug Abuse Prevention and Control Act of 1970.

The Court held that "forfeiture generally and statutory forfeiture in particular historically have been understood, at least in part, as punishment." *Id.* at 611–19, 113 S.Ct. 2801. More specifically, the Court held that forfeiture under the statute at issue, 21 U.S.C. §§ 881(a)(4) and (a)(7), was intended as a punishment. *Id.* at 622, 113 S.Ct. 2801. For this reason, the Court held that the forfeiture was subject to the excessive fines clause. *Id.* at 622, 113 S.Ct. 2801. Ultimately, the Court remanded the case for determination of whether the forfeiture was, in fact, excessive. *Id.* at 623, 113 S.Ct. 2801.

In a recent case, *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 2036, 141 L.Ed.2d 314 (1998), the Court held that an *in personam* criminal forfeiture under 31 U.S.C. § 5316(a)(1)(A)[4] is a punishment for purposes of the excessive fines clause. The Court then went on to evaluate whether the particular forfeiture at issue was excessive.

Through *Austin* and *Bajakajian*, the Supreme Court has held that civil, criminal, *in rem* and *in personam* forfeitures can be punishments for purposes of the excessive fines clause. For this reason, our determination of whether the forfeiture under 28 U.S.C. § 2514 is subject to the excessive fines clause will not turn on the civil or *in personam* nature of the forfeiture but rather on whether the forfeiture is a "punishment."[5]

Section 2514 provides: "A claim against the United States shall be forfeited ... by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof." 28 U.S.C. § 2514. The plain meaning of the statute is that the value of the forfeiture is not restricted or even linked to the value of the loss sustained by the government. For this reason, the forfeiture is not, strictly speaking, a remedy. Additionally, because forfeiture under § 2514 requires demonstration of fraud—intentional conduct—the forfeiture is

more akin to punishment. Moreover, we note that the forfeiture, in fact, may have unmercifully harsh punitive effects because once fraud under a government contract has been committed and proved, *all claims* under the contract are forfeited, even ones not related to the fraud. *See Little*, 138 Ct.Cl. at 778, 152 F.Supp. at 87.

The Court of Claims, in *O'Brien Gear & Machine Co. v. United States*, 219 Ct.Cl. 187, 209–212, 591 F.2d 666, 678–80 (1979), likewise alluded that the purpose of the statute was to punish fraud. In discussing the legislative history of 28 U.S.C. § 2514, the court stated:

> The debates on the Court of Claims Act contain repeated references to the frauds which had accompanied the past consideration of claims in Congress, to the firmness of Congressional intention to guard against such frauds in the claims in the court and to the purpose of what is now section 2514 as a preventative and a *penalty*.

*O'Brien*, 219 Ct.Cl. at 209, 591 F.2d at 678 (emphasis added). The court cited the floor debate, in which it was said that the bill was "meant to visit with merited punishment that corrupted moral sense which regards the Government as always a proper prey for fraudulent rapacity." *Id.* (citations omitted). The court concluded that "Congress' purpose to prevent and *punish* fraud ... was aimed at all who committed fraud and thus at all plaintiffs in the court." *Id.*

For all the reasons stated above, we conclude that the forfeiture in this case is punitive and therefore is subject to the excessive fines clause. However, this determination does not benefit plaintiff.

Fraud is easy to commit and difficult to detect. It was undoubtedly this combination of factors that led Congress to enact the extreme measure embodied in the forfeiture statute applicable to those who conduct business with the government. More to the point, while the statute may be extreme,

---

**4.** This section of the United States Code punishes the willful failure to report the transportation of more than $10,000 outside the United States.

**5.** In *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 2035–36, 141 L.Ed.2d 314 (1998), the Supreme Court undermined *Austin*

insofar as *in rem* forfeitures are concerned. This trend does not affect our case, because the forfeiture here is *in personam*. The forfeiture is not aimed at the guilty property, but at the guilty person (plaintiff corporation).

especially as interpreted and applied by the courts, it is not excessive. Every contractor doing business with the government since enactment of the forfeiture statute has known, or has been deemed to know, of the extremely serious consequences of fraud against the government. The statute put the world on notice that temptation to commit fraud should be resisted, *inter alia*, because of the total forfeiture of contract-based claims which will result.

■ Further, the fraud committed by plaintiff's president and sole shareholder was neither minor nor of short duration. The fraud consisted of blatant falsification of financial records in order to cheat the government out of rents to which it was entitled, and the falsifications continued over an extended period. Def.Mot. (7/31/97), Appendix (Transcript of Criminal Cause for Pleading) at 58–64. Forfeiture of all rights under the contract hardly seems constitutionally excessive under these circumstances.

## C

Plaintiff's first claim is stated as a claim under the contract and, in the alternative, as a takings or statutory claim. Specifically, plaintiff asserts in its complaint and throughout its briefs that it is entitled to compensation for its vested property rights in the marina and that the government's use of the property without compensation constitutes a taking. *See, e.g.,* Amend.Compl. (10/10/96), ¶¶ at 14, 26, 32; Pl.Resp. (10/7/97) at 5, 10–20. Plaintiff argues that the CPA, 16 U.S.C. §§ 20 – 20g, protects its investment as concessioner and establishes its possessory interest in its improvements.

■ The CPA allows the Secretary of the Interior to give concessioners a property interest in their improvements even though those improvements are on federal land.

[T]he Secretary may include in the contracts for the providing of facilities and services such terms and conditions as, in his judgment, are required to assure the concessioner of adequate protection against loss of investment in structures, fixtures, improvements, equipment, supplies, and other tangible property provided by him for the purposes of the contract ... resulting from discretionary acts policies, or decisions of the Secretary occurring after the contract has become effective under which acts, policies or decisions the concessioner's authority to conduct some or all of his authorized operations under the contract ceases or his structures, fixtures, and improvements ... are required to be transferred to another party or to be abandoned, removed, or demolished. Such terms and conditions *may* include an obligation of the United States to compensate the concessioner for loss of investment, as aforesaid.

16 U.S.C. § 20b(a) (emphasis added).

Section 20e of the CPA more precisely provides concessioners with a compensable interest in their improvements:

A concessioner who ... constructs, pursuant to a contract ... any structure, fixture, or improvement upon land owned by the United States within an area administered by the National Park Service shall have a possessory interest therein, which shall consist of all incidents of ownership except legal title.... The said possessory interest shall not be extinguished by the expiration or other termination of the contract and may not be taken for public use without just compensation. The said possessory interest may be assigned, transferred, encumbered, *or relinquished.*

16 U.S.C. § 20e (emphasis added).

Plaintiff asserts the CPA as an alternative basis for relief, arguing that claims thereunder are not subject to the forfeiture provisions of 28 U.S.C. § 2514.

Although the language of the CPA provides concessioners with a possessory interest in their improvements, the CPA also allows that interest to be waived: "The said possessory interest may be assigned, transferred, encumbered, or *relinquished.*" 16 U.S.C. § 20e (emphasis added).

The legislative history supports this interpretation of the CPA: "Provision is also included in the bill for *relinquishment* of a possessory interest; this will permit *waiver,* if, in particular circumstances, the concessioner and the Secretary agree that such is

proper." S.Rep. No. 765 (1965), *reprinted in* 1965 U.S.C.C.A.N. 3489, 3491 (emphasis added). We conclude from the language of the CPA, that a concessioner can waive its right to retain a possessory interest in its improvements.

█ In this case, plaintiff did just that. Plaintiff agreed in the contract to release any possessory interest it had in its improvements. The contract states:

> This contract does not grant the Concessioner any possessory interest in concessioner improvements built on lands assigned during the term of this contract. The concessioner relinquishes and waives any right of compensation for any Concessioner improvements made on the Government owned lands assigned for the purposes of this contract.

Amend.Compl., Tab 1 (Concession Contract) at 6.

Plaintiff argues that it did not waive its possessory interest under the contract and that this fact is proved by section 11 of the contract "which specifically granted [plaintiff] a right of compensation for the property to be held for the use of a successor concessioner (including the government itself) and for the use of its personal property by any temporary operator." Pl. Sur-reply (2/18/98) at 6. Section 11 of the contract states:

> If for any reason, the Concessioner shall cease to be authorized to conduct the operations authorized hereunder ... and thereafter such operations are to be conducted by a successor, whether a private person or an agency of the government, (i) the Concessioner will sell and transfer to the successor designated by the Secretary *all property of the Concessioner used or held for use in connection with such operations;* and (ii) the Secretary will require such successor, as a condition to the granting of a permit or contract to operate, to purchase from the Concessioner the fair value *thereof* and any unrecovered costs of Government-owned personal property and equipment replaced by Concessioner.

Amend.Compl., Tab 1 (Concession Contract) at 11 (emphasis added).

In sum, the CPA states that a concessioner has a right to be compensated for its improvements on government-owned land. The CPA also states that this right can be waived. The contract contains two relevant provisions, one of which states that the concessioner does not have a right to compensation for improvements because the concessioner has waived any possessory interests in improvements and one of which states that the concessioner has a right to compensation for all property used to run the concession. Plaintiff argues that the latter provision proves that the former provision does not constitute waiver of its right to a possessory interest in improvements. Pl. Sur-reply (2/18/98) at 6.

Plaintiff urges us to consider various correspondence and the latest prospectus for the Gateway Marina concession, all of which, plaintiff asserts, contain admissions by the NPS that plaintiff has a right to be compensated for its possessory interests in the marina. *See, e.g.,* Pl. Sur-reply (2/18/98) at 7–8; Pl.Supp.Decl. (4/3/98), ¶¶ 4–8. However, we conclude that the provisions of the contract do not contradict each other; a right to compensation for property used for the marina (e.g., supplies) does not undo the relinquishment of possessory interest in marina improvements. Because the terms of the contract do not conflict and are unambiguous, parol evidence and other alleged admissions are not relevant. *Barseback Kraft AB v. United States,* 121 F.3d 1475, 1479 (Fed.Cir. 1997).

Based on the language of the CPA and the language of the contract, we conclude that the plaintiff does not have a "possessory interest" under the CPA in the improvements it made at the marina because plaintiff waived these rights when it signed the concession contract. Although the contract purports to secure the concessioner's right to compensation for other "property ... used ... in connection with such operations," Amend.Compl., Tab 1 (Concession Contract) at 12, all of plaintiff's rights and claims based on the contract were forfeited by the fraud.

### D

We hold that defendant has established that plaintiff committed fraud against the

United States under the government contract-in-suit and, as a result, its special plea in fraud must be granted. Accordingly, we concluded that defendant is entitled, pursuant to 28 U.S.C. § 2514, to a judgment of forfeiture with respect to all claims asserted by plaintiff.

## V

Based on the foregoing, it is ORDERED as follows:

1. To the extent that defendant's dispositive motion filed on July 30, 1997 seeks dismissal of counts four, five and six of the amended complaint for lack of subject-matter jurisdiction, the motion is DENIED.

2. To the extent that defendant's said dispositive motion seeks a declaration of forfeiture pursuant to 28 U.S.C. § 2514 and, consequently, summary judgment with respect to counts one, two and three of the amended complaint, the motion is GRANTED.

3. Further, counts four, five and six of the amended complaint are declared to be forfeited to the United States of America pursuant to 28 U.S.C. § 2514.

Entry of judgment for defendant with respect to all of plaintiff's claims shall be withheld pending resolution of all issues (including damages issues) related to defendant's counter-claim.

The parties shall file a joint status report by Monday, August 9, 1999, concerning the prospects of settlement with respect to defendant's counter-claim filed on March 5, 1998, and, if settlement is unlikely, a suggested procedure for addressing and resolving said counter-claim.